IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01725-PSF-MJW

RODNEY ATKINSON,

Plaintiff,

v.

JOE ORTIZ, et al.,

Defendants.

---

**RECOMMENDATIONS ON
DEFENDANTS' MOTION TO DISMISS (Docket No. 26)
and
PLAINTIFF'S MOTION FOR LEAVE TO WITHDRAW STATE CLAIMS
(Docket No. 67)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to United States

Magistrate Judge issued by District Judge Phillip S. Figa on November 27, 2006.

(Docket No. 14).

Before the court for recommendation are two dispositive motions. The first

motion is the Defendants' Motion to Dismiss (Docket No. 26). Plaintiff, through pro

bono counsel, filed a response (Docket No. 43), defendants filed a reply (Docket No.

53), and plaintiff filed a sur-reply (Docket No. 66). The second motion is the Plaintiff's

Motion for Leave to Withdraw State Claims (Docket No. 67). Defendants filed a

response (Docket No. 70), and plaintiff filed a reply (Docket No. 72). The court has

considered these filings, except for the plaintiff's sur-reply, which contained factual

information and exhibits that were not part of the Prisoner Complaint.  Such information

was not necessary for a recommendation on the defendants' motion to dismiss, and the

court thus did not convert the motion to a motion for summary judgment.  The court has

also considered applicable Federal Rules of Civil Procedure and case law.  The court

now being fully informed makes the following findings, conclusions, and

recommendations.

**PLAINTIFF'S ALLEGATIONS**

Plaintiff commenced this action without counsel.  In his pro se Prisoner

Complaint (Docket No. 2), he alleges the following.  Plaintiff is incarcerated in the

Colorado Department of Correction ("DOC") at the Arkansas Valley Correctional

Facility ("AVCF").  In about 1999, he started having knee problems that caused him

extreme pain and discomfort and affected his mobility in his daily activities.  He made

numerous requests to the AVCF medical department for adequate care, and he was

scheduled for x-rays and eventually saw a surgeon, Dr. Patterson, twice.  Dr. Patterson

explained that both knees were in bad condition, that the right knee was worse, and

that surgery approval was for only the right knee.  Dr. Patterson operated on the right

knee about eight months later and gave orders for physical therapy for both knees.

Plaintiff saw the physical therapist only twice for his right knee only and was denied

further access by the defendants, contrary to the doctor's orders.

Plaintiff started experiencing more pain in both legs and numbness in his lower

legs and feet.  He has submitted numerous requests to the AFCF medical department,

3

and "the defendants fail to provide any treatment and only taunt the plaintiff by stating
to him that his knees are shot and only provide him with motrin to mask the pain he is in
and deliberately fail to provide any adequate medical treatment to him."  (Docket No. 2
at 5).

In addition, plaintiff has submitted numerous requests to the medical department
regarding his complaint that the prescribed Motrin was causing extreme heartburn.  The
defendants in the medical department, however, "taunted the plaintiff about the
heartburn and pain in his legs and knees and numbnessin [sic] his feet, and
intentionally prescribed him a mental health drug, Pamelor."  (Docket No. 2 at 5).  The
Pamelor has made plaintiff "sluggish, drowsy, nauseated and dizzy, to say the least,
and the plaintiff still had extreme pain and discomfort in his legs, knees and numbness
in his feet."  (Docket No. 2 at 5).  Once again, plaintiff submitted several request to the
medical department, this time regarding the Pamelor and his continuing pain and
discomfort in his legs, knees, and the numbness in his feet, yet "the defendants have
failed to provide any adequate treatment. . . .  It is now 2006 and the defendants have
failed to provide any specialist or doctors for the plaintiff though his legs, knees and the
numbness in his feet continue to persist and have gotten severly [sic] worse since the
first surgeons [sic] examination in 2001.  The defendants have failed to provide
adequate treatment for the plaintiff."  (Docket No. 2 at 5).

Furthermore, plaintiff avers that he

has notified and made aware of the inadequate medical treatment for his
knees and lower legs and the numbness of his feet to the defendants . . .
Ortiz and Leyba through the formal grievance procedures filed by him in
which he has filed the mandatory three (3), and all defendants have failed

4

to remedy the situation though being in a position to do so and the defendants are aware of the ongoing inadequate medical treatment being provided by the AVCF medical department through te [sic] multiple complaints and grievances that are filed by the numerous inmates at the facility and the defendants acquiesce in the violations. . . .  Plaintiff has notified and made aware of the serious pain and discomfort he is experiencing to the defendants Laurence, Singh, Beecroft, Martinez, and Wasko, who all work in the AVCF medical department, and these defendants intentionally failed to remedy the inadequate medical treatment and intentionally provided plaintiff with a mental drug, though he has no mental health needs, to deter his efforts to obtain adequate medical treatment.

(Docket No. 2 at 5-6).

Based on the above, plaintiff raises six claims for relief, namely, three claims of deliberate indifference to serious medical needs in violation of the Eighth Amendment (Claims One through Three) and Colorado state law torts of medical malpractice (Claim Four), negligence (Claim Five), and outrageous conduct (Claim Six).  More specifically, in Claim One, plaintiff asserts:

1.  The defendants Wasko, Martinez, Beecroft, Singh and Laurence has deliberately failed to provide any adequate treatment for the Plaintiff left knee and failed to provide adequate treatment for the plaintiff's right knee, and the defendants have failed to provide the ordered physical therapy of the surgeon for the right and left knees. These defendants have also failed to provide adequate treatment for the numbness in the plaintiff's feet and the pain shooting thropugh [sic] the plaintiff's lower legs.  These defendants have been deliberate indifference to the serious medical needs of the plaintiff.

2.  The defendants CDOC, Ortiz and Leyba were notified of the serious medical needs of the plaintiff and they failed to remedy the situation and acquiesced in its ongoing violations.

(Docket No. 2 at 7).

In Claim Two, plaintiff asserts:

1.  The defendants Wasko, Martinez, Beecroft, Singh, and

Laurnece [sic] manipulated and abused there [sic] positionsin [sic] the prison system, to wantonly inflict unnecessary pain on the plaintiff by failing to provide access to a specialist and doctors care that the plaintiff's knees required, and due to the failure to see a specialist and doctor to receive the adequate care, the plaintiff's knees caused ongoing deterroation [sic] which led to the medical problems in his lower legs and the swelling in both his feet.

2.  The defendants CDOC, Ortiz, and Leyba were notified of the serious medical needs of the plaintiff and they failed to remedy the situation and acquiesced in its ongoing violations.

(Docket No. 2 at 8).

In Claim Three, plaintiff asserts:

1.  The defendant Wasko, Martinez, Beecroft, Singh, and Laurence have deliberately caused cruel and unusual punishment and are deliberate indifference to the plaintiff's health by prescribing him the mental drug 'Pamelor'.  The plaintiff does not suffer from any documented mental health issues in which to justify the prescribing of the mental health drug.  The defendants intentionally prescribed the mental health drug to mask the pain and suffering the plaintiff is experiencing from his serious medical injuries.

2.  The defendants . . . Ortiz, and Leyba were notified of the serious medical needs of the plaintiff and they failed to remedy the situation and acquiesced in its ongoing violations.

(Docket No. 2 at 9).

The defendants who remain in this action following Judge Weinshienk's Order to

Dismiss in Part and to Draw Case to a District Judge and to a Magistrate Judge

(Docket No. 10) are defendants Joe Ortiz (Executive Director of the DOC), Ronald

Leyba (Warden of AVCF), Kellie Wasko (AVCF Medical Administrator), Cindra

Martinez (of the AVCF Medical Department), Patty Beecroft (AVCF physician), Tejinder

Singh (AFCF PA), and Theodore Laurence (AFCF PA).

Plaintiff seeks injunctive and monetary relief.

6

## PLAINTIFF'S MOTION FOR LEAVE TO WITHDRAW STATE CLAIMS

Plaintiff, through pro bono counsel, seeks leave to withdraw Claims Four through Six of the pro se Prisoner Complaint, which assert state claims of medical malpractice, negligence, and outrageous conduct because even though the plaintiff adamantly asserts that he sent the notice required under § 24-10-109, C.R.S., discovery produced by defendants did not include such notice.

In response, defendants disagree with plaintiff's assertion that plaintiff's discovery request encompassed a notice of claim filed in the Attorney General's Office. Nevertheless, a search of the Attorney General's Office revealed that the plaintiff submitted a Notice in February 2006, a copy of which is attached to defendants' response to the plaintiff's motion.  (Docket No. 70).  Defendants assert that the notice is both untimely and insufficient under Colorado law and does not save the state law claims.

In reply, plaintiff states: "Plaintiff has reviewed the notice attached to Defendants' Response, as well as the case law relevant to the CGIA notice provisions, and concluded that the responsible course of action is to withdraw the State claims (Claims Four through Six) included in his *pro se* complaint on August 31, 2006." (Docket No. 72 at 2).  Plaintiff further notes that case law suggests that he may still amend his pleadings once as a matter of course.  (Docket No. 72 at 2).

Rule 41(a)(1) of the Federal Rules of Civil Procedure provides:

Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of court (I) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment,

whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action.  Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.

Fed. R. Civ. P. 41(a)(1).

Here, defendants have not filed an Answer or a summary judgment motion.  In addition, there is no indication that plaintiff has had the state claims dismissed in a state or federal court.  Therefore, leave of court is not required to withdraw his claims at this time, the court thus recommends that plaintiff's motion be granted.  In view of that recommendation, the court has not addressed those claims or the defendants' arguments to dismiss them.

## DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss the plaintiff's federal claims on the following grounds: (1) the DOC employees are immune from liability in their official capacities; (2) plaintiff's federal claims are barred by the applicable statute of limitations; (3) defendants Ortiz and Leyba did not personally participate in the alleged deprivation; (4) plaintiff's Complaint fails to state an Eighth Amendment violation; and (5) the CDOC employees are entitled to qualified immunity.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and resolve all reasonable inferences in plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  A

case should not be dismissed for failure to state a claim unless the court determines

beyond doubt that plaintiff can prove no set of facts which entitles him to relief.  Hishon

v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46

(1957).

### Official Capacity Claims

Defendants correctly assert that to the extent they are being sued in their official

capacities, the claim for damages must be dismissed.  Plaintiff states in his Response

that to the extent the Complaint is read as seeking monetary damages from defendants

sued in their official capacities, "those claims are dropped and will be withdrawn, if

necessary, in a separate following."  (Docket No. 43 at 3).

"[T]he Eleventh Amendment precludes a federal court from assessing damages

against state officials sued in their official capacities because such suits are in essence

suits against the state."  Hunt v. Bennett, 17 F.3d 1263, 1267 (10th Cir. 1994).

Accordingly, plaintiff's official capacity claims for damages should be dismissed with

prejudice.

### Statute of Limitations

The parties agree that plaintiff's § 1983 claims are governed by the two-year

statute of limitations contained in § 13-80-102, C.R.S.; Workman v. Jordan, 32 F.3d

475, 482 (10th Cir. 1994); Merrigan v. Affiliated Bankshares of Colo., Inc., 775 F. Supp.

1408, 1411-12 (D. Colo. 1991).  Federal law, rather than state law, determines when a

federal claim accrues.  The statute of limitations begins to run when the plaintiff knows

or has reason to know of the existence and cause of injury which is the basis of his

action. Kripp v. Luton, 466 F.3d 1171, 1175 (10th Cir. 2006); Industrial Constructors

Corp. v. United States Bureau of Reclamation, 15 F.3d 963, 969 (10th Cir. 1994).

Here, the Prisoner Complaint is dated August 16, 2006, was received by the

court on August 22, 2006, and was filed on August 31, 2006.  (Docket No. 2).  Under

the prison "mailbox rule," the Complaint should be deemed "filed" at the moment of its

delivery to prison authorities for forwarding to the District Court.  See Houston v. Lack,

487 U.S. 266 (1988).

Defendants assert that the Complaint's allegations dictate that this case was not

timely filed.  They assert that the gravamen of the Complaint is that plaintiff was denied

treatment and appropriate pain medication, but the allegations of the Complaint provide

that his complaints regarding treatment and pain medication began in 1999 at the

earliest and 2001 after his first surgery, at the latest.  Defendants thus contend that

since the Complaint was filed on August 31, 2006, his claim is time-barred.

In response, plaintiff asserts, inter alia, that his claims are not time-barred

because he has alleged that the DOC employees acted together to deprive him of his

Eighth Amendment rights and that the Tenth Circuit has held that an allegation of a

conspiracy constitutes a viable claim under § 1983 even if the alleged conspiracy

began at a point that would be barred by the statute of limitations.  (Docket No. 43 at

4).  Defendants, however, correctly point out that in the Prisoner Complaint plaintiff

does not either explicitly or even implicitly assert a conspiracy claim or even allege that

such a conspiracy ever existed.

10

Plaintiff also argues in his Response that the "continuing wrongs doctrine"[1] should apply here because the defendants continue to deny him adequate medical care. (Docket No. 43 at 4). Plaintiff, however, acknowledges that the Tenth Circuit has not yet specifically applied this doctrine to § 1983 actions. See Frazier v. Jordan, 2007 WL 60883, *4 (10th Cir. Jan. 10, 2007), cert. denied, 127 S.Ct. 2892 (2007); McCormick v. Farrar, 147 Fed. Appx. 716, 719-20 (10th Cir. 2005); Burkley v. Correctional Healthcare Management of Okla., Inc., 141 Fed. Appx. 714, 716 n.2 (10th Cir. 2005); Sellers v. Butler, 2007 WL 2042513, *13 (D. Kan. July 12, 2007); Montoya v. Board of County Com'rs, 2007 WL 779832, *6 (D. Colo. Mar. 14, 2007). See also Thomas v. Denny's, Inc., 111 F.3d 1506, 1513-14 (10th Cir. 1997) (doctrine does not apply to § 1981 claims).

Even assuming, for the sake of argument, that this doctrine does apply to § 1983 actions, this court notes that the Tenth Circuit's application of the doctrine in other contexts, such as Title VII claims, "is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." Koch v. Daniels, 2007 WL 2029003, *9 (W.D. Okla. July 10, 2007) (quoting Martin v. Nannie & the Newborns, Inc., 3 F.3d 1410, 1415 n.6 (10th Cir. 1993), overruled on other grounds, Davidson v. America Online, Inc., 337 F.3d 1179 (10th Cir. 1993)). Therefore, the Tenth Circuit has held that even where this doctrine is applicable, such a claim fails "if the plaintiff knew, or through the exercise of reasonable diligence would have known, [he] was being discriminated against at the

---

[1]This doctrine is also known as the "continuing violation" doctrine.

time the earlier events occurred."  Id. (quoting Davidson, 337 F. 3d at 1184).  Here,

upon a review of the Prisoner Complaint, it is evident that plaintiff knew that his rights

were allegedly being violated by the defendants with respect to his medical care as far

back as 1999.  Therefore, this court finds that the continuing violations doctrine is not

applicable under the facts alleged here.

Nevertheless, this court finds that plaintiff's entire claim is not time-barred.  See

Durham v. Lappin, 2006 WL 2724091, *6 (D. Colo. Sept. 21, 2006).  Construing the

alleged facts in the light most favorable to the plaintiff, it is clear that some of the

events complained of fall within the statute of limitations.  Therefore, dismissal of the

plaintiff's Eighth Amendment claims on this ground is not appropriate.  Id. at n.10 (Rule

"12(b)(6) does not contemplate dismissal of *portions* of claims . . . .").

**Personal Involvement**

Defendants Ortiz and Leyba assert that the plaintiff has failed to allege that they

personally took part in the alleged violation, nor has he specified any nexus between

them and the alleged violation.  They claim that the only allegations concerning them

are that they were purportedly notified of plaintiff's complaints as a result of the

grievances he filed, which they claim is insufficient as a matter of law to impose liability

on them.  Furthermore, they claim that even if they were aware of the plaintiff's

complaints, once the matter was referred to a DOC doctor, the matter was out of their

hands.

"Individual liability under § 1983 must be based on personal involvement in the

alleged constitutional violation."  Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir.

12

1997).  With regard to the liability of supervisors:

> Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates.  "[T]here is no concept of strict supervisor liability under § 1983." . . .  "This does not mean that a supervisor may not be liable for injuries caused by the conduct of one of his subordinates.  It does mean that his liability is not vicarious, that is, without fault on his part." . . . .

> Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights.  To establish supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation.  Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" . . .  In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation." . . . .

> In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution.  Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. . . .  In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior.  Because "mere negligence" is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. . . .

Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006)

(citations omitted).

Reading the Prisoner Complaint in the light most favorable to the plaintiff, this court finds that the plaintiff has alleged the requisite affirmative link between Oritz' and Leyba's conduct and the alleged constitutional violations.  More specifically, plaintiff avers with respect to each of his Eighth Amendment Claims that "Ortiz and Leyba were notified of the serious medical needs of the plaintiff and they failed to remedy the

13

situation and acquiesced in its ongoing violations." (Docket No. 2 at 4, 5, 6). In

addition, in the "Nature of the Case" section of that pleading, plaintiff avers that he:

> has notified and made aware of the inadequate medical treatment for his
> knees and lower legs and the numbness of his feet to the defendants . . .
> Ortiz and Leyba through the formal grievance procedures filed by him in
> which he has filed the mandatory three (3), and all defendants have failed
> to remedy the situation though being in a position to do so and the
> defendants are aware of the ongoing inadequate medical treatment being
> provided by the AVCF medical department through te [sic] multiple
> complaints and grievances that are filed by the numerous inmates at the
> facility and the defendants [sic] acquiesce [sic] in the violations.

(Docket No. 2 at 5-6). Based on these averments, this court recommends that the

claims against defendants Ortiz and Leyba not be dismissed at this time.

### Eighth Amendment Claim and Qualified Immunity

Defendants assert that the Complaint fails to state an Eighth Amendment

violation and that the defendants are entitled to qualified immunity. When a defendant

raises a qualified immunity defense, the plaintiff "bears the burden of showing that:

(1) the defendants' actions violated a constitutional or statutory right; and (2) the right

was clearly established and reasonable persons in the defendants' position would have

known their conduct violated that right." Cruz v. City of Laramie, Wyo., 239 F.3d 1183,

1187 (10th Cir. 2001). "'Ordinarily, in order for the law to be clearly established, there

must be a Supreme Court or Tenth Circuit decision on point, or the clearly established

weight of authority from other courts must have found the law to be as the plaintiff

maintains.'" Id. (footnote omitted). "This is not to say that an official action is protected

by qualified immunity unless the very action in question has been held unlawful . . . but

is to say that in the light of pre-existing law the unlawfulness must be apparent.'" Hope

14

v. Pelzer, 536 U.S. 730, 739 (2002) (citations omitted).  "[O]fficials can still be on notice

that their conduct violated established law even in novel factual circumstances. . . .

Although earlier cases involving 'fundamentally similar' facts can provide especially

strong support for a conclusion that the law is clearly established, they are not

necessary to such a finding.  The same is true of cases with 'materially similar' facts."

Id. at 741.

"Qualified immunity shields [a defendant] from suit when [the defendant] makes

a decision that, even if constitutionally deficient, reasonably misapprehends the law

governing the circumstances [the defendant] confronted."  Brosseau v. Haugen, 543

U.S. 194, 198 (2004).  "Because the focus is on whether the [defendant] had fair notice

that [the defendant's] conduct was unlawful, reasonableness is judged against the

backdrop of the law at the time of the conduct.  If the law at that time did not clearly

establish that the [defendant's] conduct would violate the Constitution, the [defendant]

should not be subject to liability or, indeed, even the burdens of litigation."  Id.

 "When confronted with a claim of qualified immunity, a court must ask first the

following question: 'Taken in the light most favorable to the party asserting the injury,

do the facts alleged show the [defendant's] conduct violated a constitutional right?'"

Id. at 197.  Based upon the findings below, this court answers that question in the

affirmative.

The question here is whether the plaintiff's allegations, if true, state a claim

under the Eighth Amendment.  Kikumura v. Osagie, 461 F.3d 1269, 1291 (10th Cir.

2006).  "Medical malpractice does not become a constitutional violation merely

15

because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A

complaint "that a physician has been negligent in diagnosing or treating a medical

condition does not state a valid claim of medical mistreatment under the Eighth

Amendment." Id. at 105-06. Rather, "a prisoner must allege acts or omissions

sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at

106. "The test for constitutional liability of prison officials 'involves both an objective

and a subjective component.'" Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005). As the

Tenth Circuit has explained:

> to properly set forth an Eighth Amendment claim on which relief may be
> granted, [the prisoner] must set forth facts demonstrating [1] that his
> alleged medical need . . . was sufficiently serious to meet the objective
> element of the deliberate indifference test, and [2] that the Defendants'
> delay in meeting that need caused him substantial harm. . . . Finally, to
> meet the subjective element of the deliberate indifference test, [the
> prisoner] must allege facts supporting an inference [3] that Defendants
> knew about and disregarded a substantial risk of harm to his health or
> safety.

Oxendine v. Kaplan, 241 F.3d 1272, 1276-77 (10th Cir. 2001) (quotations omitted).

Their refusal to provide a particular course of treatment preferred by the plaintiff does

not constitute deliberate indifference. See Perkins v. Kansas Dep't of Corrections, 165

F.3d 803, 811 (10th Cir. 1999).

Defendants assert that the plaintiff has not alleged any facts that support the

conclusion that the defendants acted deliberately. They claim that there is no genuine

dispute that plaintiff was not denied treatment, and they note that indeed the Prisoner

Complaint references numerous contacts with physicians, specialists, and medical

personnel. Defendants assert that:

16

His argument is that he needed more treatment.  The bulk of his allegations go to the effectiveness and competence of the treatment given.  There is simply no allegation that any of the CDOC Employees had a culpable state of mind with respect to his medical needs. [Plaintiff's] factual allegations, even when accepted as true, support nothing more than a claim for negligence at best.  Even assuming that the CDOC Employees' conduct was negligent, that would not establish deliberate indifference. . . .

Finally, [plaintiff's] disagreement with his doctors' diagnosis states no material dispute of fact. . . .

Plaintiff received medical attention from several physicians.  He was examined by doctors on numerous occasions, provided with treatment and pain medications.  The Eighth Amendment does not require more.  A disagreement between medical staff and inmate as to need for treatment or the type of treatment does not state an Eighth Amendment violation.

(Docket No. 27 at 8-9).

This court, however, finds that at least for purposes of the motion to dismiss, the plaintiff has stated an Eighth Amendment claim upon which relief may be granted. While the pro se Prisoner Complaint is not a model pleading, it adequately alleges that defendants were and are deliberately indifferent to plaintiff's serious medical needs.  As stated above, plaintiff claims that contrary to his doctor's orders, he has never received physical therapy for his left knee and received just two physical therapy session for his right knee.  In addition, he claims he has experienced more pain in both legs and numbness in his lower legs and feet, has submitted numerous requests to the AFCF medical department, and "the defendants fail to provide any treatment and only taunt the plaintiff by stating to him that his knees are shot and only provide him with motrin to mask the pain he is in and deliberately fail to provide any adequate medical treatment to him."  (Docket No. 2 at 5).  With regard to the Motrin, the only drug purportedly given

17

to plaintiff for his legs and feet, plaintiff claims that he has submitted numerous requests to the medical department regarding his complaint that it was causing extreme heartburn.  The defendants in the medical department, however, "taunted the plaintiff about the heartburn and pain in his legs and knees and numbnessin [sic] his feet, and intentionally prescribed him a mental health drug, Pamelor."  (Docket No. 2 at 5). Furthermore, the Pamelor has allegedly made plaintiff "sluggish, drowsy, nauseated and dizzy, to say the least, and the plaintiff still had extreme pain and discomfort in his legs, knees and numbness in his feet."  (Docket No. 2 at 5).  Once again, plaintiff submitted several request to the medical department, this time regarding the Pamelor and his continuing pain and discomfort in his legs, knees, and the numbness in his feet, yet allegedly "the defendants have failed to provide any adequate treatment. . . .  It is now 2006 and the defendants have failed to provide any specialist or doctors for the plaintiff though his legs, knees and the numbness in his feet continue to persist and have gotten severly [sic] worse since the first surgeons [sic] examination in 2001.  The defendants have failed to provide adequate treatment for the plaintiff."  (Docket No. 2 at 5).

Reading the Prisoner Complaint as a whole in the light most favorable to the plaintiff, this court finds that at this stage of the litigation plaintiff is not merely alleging negligence or a disagreement with the medical professionals concerning his care. Instead, it appears that he is alleging that they are deliberately not treating his leg condition and his severe heartburn and are forcing him to take an unnecessary mental health drug that is causing serious side effects.   At this stage this court cannot

18

determine beyond doubt that plaintiff can prove no set of facts which entitles him to relief.

In view of this finding, as well as the fact that it is clearly established that "prisoners have an Eighth Amendment right to adequate medical care . . . ," Oxendine v. Kaplan, 241 F.3d at 1276, this court further finds that dismissal of the Prisoner Complaint is not warranted on qualified immunity grounds.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Defendants' Motion to Dismiss (Docket No. 26) be granted in part and denied in part.  More specifically, it is recommended that the motion be granted to the extent the Prisoner Complaint is read as seeking monetary damages from defendants sued in their official capacities.  In all other respects, it is recommended that the motion be denied.

**RECOMMENDED** that Plaintiff's Motion for Leave to Withdraw State Claims (Docket No. 67) be granted, and that Claims One through Three be dismissed without prejudice.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives**

19

**appellate review of both factual and legal questions.  <u>Makin v. Colorado Dep't of</u>**

**<u>Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411,**

**1412-13 (10th Cir. 1996).**

BY THE COURT:

Dated:   August 14, 2007                     s/ Michael J. Watanabe
         Denver, Colorado                    Michael J. Watanabe
                                             United States Magistrate Judge