IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Case No.  06-cv-01725-PAB-MJW

RODNEY ATKINSON,

      Plaintiff,

v.

JOE ORTIZ,
RONALD LEYBA,
KELLIE WASKO,
CINDRA MARTINEZ,
PATTY BEECROFT,
TEJINDER SINGH, and
THEODORE LAURENCE,

      Defendants.

---

## ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

---

This Eighth Amendment prison conditions case comes before the Court on two

motions for summary judgment, one filed by defendant Dr. Patricia Beecroft [Docket

No. 122] and one filed jointly by defendants Joe Ortiz, Ronald Leyba, Kellie Wasko,

Cindra Martinez, Tejinder Singh, and Theodore Laurence [Docket No. 124].  The Court

has jurisdiction over this matter based on the existence of a federal question under 28

U.S.C. § 1331.

## I.  BACKGROUND

Plaintiff Rodney Atkinson is an inmate in the custody of the Colorado

Department of Corrections ("CDOC") and is housed in the Arkansas Valley Corrections

Facility ("AVCF").  Mr. Atkinson apparently suffers from chronic knee problems and has

been experiencing neuropathy – disease of the nervous system – which presents itself as pain and numbness in the lower part of his legs.  Although the parties agree that Mr. Atkinson has seen AVCF medical personnel on various occasions and has been provided with some degree of treatment, Mr. Atkinson claims that the treatment he has received is inadequate or inappropriate.

On August 31, 2006, Mr. Atkinson filed a *pro se* prisoner complaint with this Court regarding the medical treatment he has received while incarcerated at AVCF. The original complaint asserted three constitutional claims alleging that all of the defendants inflicted cruel and unusual punishment on Mr. Atkinson in violation of the Eighth Amendment by being deliberately indifferent to his serious medical needs.  The first claim alleges that defendants inflicted cruel and unusual punishment on plaintiff when they "failed to provide adequate treatment" for plaintiff's chronically afflicted knees and his neuropathy.  According to the second claim, the defendants inflicted cruel and unusual punishment on plaintiff by failing to refer him to a specialist for his knees and lower extremity pain.  The third claim alleges that defendants inflicted cruel and unusual punishment on plaintiff by wrongfully prescribing the drug Pamelor, which Mr. Atkinson apparently believed was incorrectly prescribed to "mask" his pain.  The original complaint also asserted three tort claims – medical malpractice, negligence, and outrageous conduct – against certain defendants.

However, Mr. Atkinson has since withdrawn his state tort claims [Docket No. 67], and has retracted his facial objection to the use of Pamelor as a potential treatment. Pl.'s Resp. to CDOC Defs.' Mot. for Sum. J. [Docket No. 162] at 8, § 47 ("After reviewing all of the evidence, Plaintiff would agree that it was appropriate to try

2

Pamelor.").  Therefore, plaintiff's three tort claims and his third Eighth Amendment claim are no longer operative.

Since this litigation began, the named defendants and the potential relief sought also have evolved.  Mr. Atkinson originally named eight defendants: the CDOC "in its official capacity" and Joe Ortiz, Ronald Leyba, Kellie Wasko, Cindra Martinez, Patricia Beecroft, Tejinder Singh, and Theodore Laurence in their official and individual capacities.  Following an initial review of the case, the Court dismissed the CDOC as a defendant pursuant to the Eleventh Amendment [Docket No. 10].  In responding to one of the motions for summary judgment currently at issue, plaintiff admitted that defendant Cindra Martinez also should be dismissed from the case.  *See* Pl.'s Resp. to CDOC Defs.' Mot. for Sum. J. at 20.  Therefore, these two defendants are no longer active in this case.

The posture of the claims against the remaining defendants also has changed. In granting in part the defendants' motion to dismiss [Docket No. 26], the Court dismissed plaintiff's individual-capacity claims against Joe Ortiz, the Executive Director of CDOC, and Ronald Leyba, warden of AVCF.  *See* Order on Recommendation of Magistrate Judge Entered August 14, 2007 [Docket No. 78] ("Order on Recommendation") at 7-8.  The Court also dismissed the claims for monetary damages against defendants Ortiz and Leyba in their official capacities.  *See* Order on Recommendation at 5.  The Court did not specifically address whether plaintiff could obtain injunctive relief against defendants Ortiz and Leyba in their official capacity pursuant to *Ex Parte Young*, 209 U.S. 123, 155-57 (1908), and its progeny.  However, the appropriate liberal reading of Mr. Atkinson's *pro se* complaint, *see Hall v. Bellmon*,

935 F.2d 1106, 1110 (10th Cir. 1991), demonstrates his intent to obtain injunctive relief that may be had through these parties.[1]  Therefore, the only potential claim against defendants Ortiz and Leyba that remains in this case is an official-capacity claim for injunctive relief.

The remaining defendants – Wasko, Martinez, Beecroft, Singh, and Laurence – are individuals associated with AVCF's medical department.  Mr. Atkinson originally asserted claims against these defendants in their individual and official capacities.  In the order on the magistrate judge's recommendation, the Court dismissed Mr. Atkinson's monetary relief claims against these defendants in their official capacities as improper.  *See* Order on Recommendation.  Furthermore, the complaint's "Request for Relief" only indicates a desire to enjoin high-level action at the CDOC, not low-level personnel.  Therefore, because plaintiff has not asserted claims for injunctive relief against these defendants either in his complaint or elsewhere, the only claims against them that remain are for damages asserted against them in their individual capacities.

Thus, for purposes of the Court's analyzing defendants' motions for summary judgment, plaintiff has two claims for relief, both alleging infliction of cruel and unusual punishment under the Eighth Amendment.  The first claim is for failure to provide adequate treatment for plaintiff's chronically afflicted knees and neuropathy.  The second claim is for failure to provide plaintiff with access to a specialist for his knees and his pain.  Under these claims, Mr. Atkinson seeks injunctive relief against

---

[1] Following her appearance in this case, Mr. Atkinson's counsel made such an argument directly.  See Pl.'s Resp. to Defs.' Mot. to Dismiss [Docket No. 43] at 2-3. Defendants raised no objection to this assertion.  See generally Defs.' Reply in Supp. of Mot. to Dismiss [Docket No. 53].

defendants Ortiz and Leyba in their official capacity and monetary relief against defendants Wasko, Beecroft, Singh, and Laurence in their individual capacities.

On September 30, 2008, the defendants filed two separate motions for summary judgment. In the first, defendant Beecroft argues that summary judgment is appropriate under the doctrine of qualified immunity. *See* Def. Beecroft's Mot. for Sum. J. [Docket No. 122]. Following the granting of a properly requested extension of time [Docket No. 131], Mr. Atkinson responded on December 30, 2008. *See* Pl.'s Resp. to Def. Beecroft's Mot. for Sum. J. [Docket No. 137]. On January 20, 2009, Dr. Beecroft filed an untimely reply without seeking leave and without showing excusable neglect [Docket No. 154]. The Court originally struck, but later reinstated [Docket Nos. 155, 165], the reply based upon Dr. Beecroft's motion for reconsideration [Docket No. 156].

In the second pending motion for summary judgment, the remaining defendants, referred to as the CDOC defendants,[2] also seek summary judgment under qualified immunity for Mr. Atkinson's claims of individual liability against them. *See* CDOC Defs.' Combined Mot. for Sum. J. and Memorandum Br. in Supp. of Mot. for Sum. J. [Docket No. 124] ("CDOC Defs.' Mot. for Sum. J."). This motion also appears to seek summary judgment on the official capacity claims based on the contention that the undisputed material facts show that the defendants did not violate plaintiff's rights under the Eighth Amendment. Pursuant to properly submitted and granted extensions of time, Mr. Atkinson filed his response to this motion for summary judgment on February 19, 2009.

---

[2] Although Dr. Beecroft was described as a "CDOC Defendant" early in the litigation [Docket No. 26], she subsequently retained her own counsel [Docket No. 113] and undertook this litigation independently.

5

See Pl.'s Resp. to CDOC Defs.' Mot. for Sum. J. [Docket No. 162].  The CDOC defendants filed an untimely reply [Docket No. 163], which the Court struck from the record [Docket No. 164].  Consequently, defendants' motions for summary judgment are deemed fully briefed and are now ripe for review.  For the reasons stated below, the motions are granted.

## II.  ANALYSIS

### A.  Summary Judgment – Legal Standard

According to Federal Rule of Civil Procedure 56(c), a court should grant summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); Concrete Works, Inc. v. City & County of Denver, 36 F.3d 1513, 1517 (10th Cir. 1994).  The moving party bears the initial burden of showing the absence of a genuine dispute concerning a material fact in the case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

However, "[w]hen, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  Bausman v. Interstate Brands Corp., 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998)) (internal quotation marks omitted).

6

"Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115 (citing *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). However, to be clear, "it is not the party opposing summary judgment that has the burden of justifying its claim; the movant must establish the lack of merit." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1110 (10th Cir. 2009).

Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). A disputed fact is "material" if under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).

A court may not consider all proffered evidence when ruling on a summary judgment motion; only admissible evidence may enter the analysis. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). Courts are to view the permissible evidence, making reasonable inferences therefrom in the light

most favorable to the nonmoving party.  *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998).

### B.  Qualified Immunity

#### 1.  Legal Standard

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Upon a public official's assertion of a qualified immunity defense, plaintiff bears a "heavy burden" under a two-pronged analysis.  *Buck v. City of Albuquerque*, 549 F.3d 1269, 1277 (10th Cir. 2008).  Until recently, the plaintiff was required to "first establish that the defendant's actions violated a constitutional or statutory right."  *Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir. 2003).  After establishing that threshold question, the plaintiff had to establish that the right at issue was "clearly established" at the time of the defendant's alleged misconduct.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The Supreme Court recently altered the qualified immunity analysis by holding that the "mandatory, two-step rule for resolving all qualified immunity claims should not be retained."  *Pearson v. Callahan*, 129 S. Ct. 808, 817 (2009).  Instead, "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S. Ct. at 818.

The determination of whether a violation occurred under the first prong of the qualified immunity analysis turns on substantive law regarding that right.  *See*, *e.g.*, *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1282-83 (10th Cir. 2007).  On the other hand, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Casey*, 509 F.3d at 1283-84 (quoting *Saucier*, 533 U.S. at 202); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits."  *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quoting *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006)) (internal quotation marks omitted).  However, "contrary authority from other circuits does not preclude a finding that the law in this circuit was clearly established, if the contrary authority can be distinguished."  *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001).

That being said, factual novelty alone will not automatically provide a state official with the protections of qualified immunity.  *See Casey*, 509 F.3d at 1284; *Blake*, 469 F.3d at 914 ("[A] general constitutional rule that has already been established can apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." (internal quotation marks and alteration marks omitted)).  The Tenth Circuit employs a "sliding scale" in identifying clearly established law: "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly

establish the violation." *Casey*, 509 F.3d at 1284 (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)).

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 129 S. Ct. at 815.  Qualified immunity provides a defense to trial and the other burdens of litigation such as discovery, rather than just liability.  *See Saucier*, 533 U.S. at 200, *overruled on other grounds by Pearson*, 129 S. Ct. 808.  Therefore, a court is to resolve questions of qualified immunity at the earliest possible stage of litigation.  *Anderson*, 483 U.S. at 646 n.6.

### 2.  Law of the Case

Plaintiff claims that, because the magistrate judge and the Court confronted the issue of qualified immunity in the context of a previous motion to dismiss, the "law of the case" doctrine precludes further consideration at his point.  I disagree.  It is true that "[w]hen a court enunciates a rule of law in the course of a given case, the law of the case doctrine generally requires the court to adhere to the rule throughout the proceedings." *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981).  However, "the doctrine is merely a presumption, one whose strength varies with the circumstances." *Been v. O.K. Industries, Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007) (internal quotation marks omitted).

The law of the case doctrine does not prevent a district court from reconsidering its own interlocutory orders. *Been*, 495 F.3d at 1225.  In fact, even where the doctrine

constrains a district court the most – where a higher court announced the earlier ruling – there are exceptions where reconsideration is permitted: (1) when the evidence has changed substantially; (2) when there has been a relevant, binding change in the law; or (3) when the decision was clearly erroneous and would work a manifest injustice. *See Been*, 495 F.3d at 1225 & n.4.

In the present case, the decisions on which plaintiff bases his law-of-the-case argument – the magistrate judge's recommendation on defendants' motion to dismiss and the Court's order affirming it – were tailored to the particular state of the facts at that stage of the case.  *See, e.g.*, Recommendations on Defendants' Motion to Dismiss (Docket No. 26) and Plaintiff's Motion for Leave to Withdraw State Claims (Docket No. 67) [Docket No. 73] ("Recommendation") at 16 (stating that "at least *for purposes of the motion to dismiss*, the plaintiff has stated an Eighth Amendment claim upon which relief may be granted." (emphasis added)).  The magistrate judge later explained:

> Reading the Prisoner Complaint as a whole in the light most favorable to the plaintiff, this court finds that at this stage of the litigation plaintiff is not merely alleging negligence or a disagreement with the medical professionals concerning his care.  Instead, it appears that he is alleging that they are deliberately not treating his leg condition and his severe heartburn and are forcing him to take an unnecessary mental health drug that is causing serious side effects. At this stage this court cannot determine beyond doubt that plaintiff can prove no set of facts which entitles him to relief.

Recommendation at 17-18.[3]

___

[3] The Supreme Court has since abrogated the "no-set-of-facts" pleading standard the magistrate judge applied in making the initial qualified immunity determination.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007).

Furthermore, the Court applies substantially the same law regarding qualified immunity and the Eighth Amendment that the magistrate judge applied at the motion to dismiss stage of the case.  However, the state of the facts and the legal standard have changed.   Therefore, the Court's determination regarding the defendants' qualified immunity is not constrained by the previous conclusions in this case.  *Cf. Trujillo v. Bd. of Educ. of Albuquerque Pub. Sch.*, 212 F. App'x 760, 766 (10th Cir. 2007) (citing *Major*, 647 F.2d at 111-12) (noting that where a "case involves the district court's consideration of new facts and does not involve a change in the district court's application of any rule of law, the law of the case doctrine is not applicable").

## C.  Eighth Amendment Claims Regarding Medical Treatment

### 1.  Undisputed Material Facts

The material undisputed facts regarding Mr. Atkinson's claims are as follows: When Mr. Atkinson first arrived at AVCF in July of 1999, he did not report any knee or leg troubles.  Starting in October of that same year, Mr. Atkinson began complaining of pain in his right knee.  After repeated visits with AVCF staff, physical therapy, diagnostic x-rays, and a referral to an orthopedic surgeon, Mr. Atkinson underwent arthroscopic surgery in February 2001 in an attempt to alleviate the problems in his right knee. Following surgery, Mr. Atkinson was seen in physical therapy until it was determined that maximum benefit had been achieved.  By July 2002, the pain in Mr. Atkinson's right knee had returned and, for the first time, he also reported pain in his left knee.  In February 2004, Mr. Atkinson began reporting numbness in his lower legs, which over time was accompanied by tingling and pain.  During Mr. Atkinson's time at AVCF, the

12

medical staff has physically examined and evaluated him many times, has taken several diagnostic x-rays, has tested him for diabetes, inflammatory arthritis, and vitamin B and folate deficiencies, and has conducted an Electromyography (EMG) test.[4]

In addressing Mr. Atkinson's ailments, AVCF's medical staff have tried a variety of treatments.  With respect to plaintiff's right knee, the staff early on referred Mr. Atkinson to an orthopedist.  Plaintiff underwent arthroscopic surgery and received physical therapy.  Following this attempt, which appears to have had limited long-term impact, the staff prescribed heel cups, nonsteroidal anti-inflammatory drugs (motrin, Disalcid), pain medication (Palomar), vitamin B shots, and stretching and strengthening exercises for Mr. Atkinson.  Despite these efforts, Mr. Atkinson reported continued pain and discomfort in his knees, lower legs, and feet.  Mr. Atkinson requested that he receive additional treatment such as prednisone and that he be referred to a specialist for further evaluation.  Neither request was granted.

Ultimately, there appears to be some uncertainty as to the disorder or the disorders afflicting Mr. Atkinson.  Defendants believe that Mr. Atkinson's knee pain is from chondromalacia, the misalignment of the patella in the knee joint.  Therefore, defendants believe the best course of treatment is muscle strengthening in order to fix the alignment.  Although defendants appear to concede that they do not know what is causing Mr. Atkinson's numbness and tingling in his lower extremities, they opine that it could be peripheral neuropathy.

---

[4] Although the EMG test was first ordered years earlier, it was not conducted until February 2009.

13

Mr. Atkinson's expert, Dr. Edward S. Lewis, M.D., believes that Mr. Atkinson is suffering from osteoarthritis, an uncurable, chronic, and degenerative disease that afflicts the joints.  Dr. Lewis opined that the early treatment Mr. Atkinson received on his right knee – physical therapy, activity adjustment, and anti-inflammatory medication followed by arthroscopy – was appropriate.  He also noted that the next step in the standard treatment of osteoarthritis is a series of injections with a hyaluronate compound.  Dr. Lewis noted that the injections are effective in seventy-five percent of the individuals given them and that these individuals generally see an improvement in, but not a total elimination of, symptoms for six months to a year.  Dr. Lewis explains that the final step in treatment of this disease, knee replacement, is not recommended for someone of Mr. Atkinson's age.  Dr. Lewis suggests that the pain in Mr. Atkinson's left knee also could be caused by osteoarthritis, but recommends that Mr. Atkinson see an orthopedist to confirm that.  Finally, Dr. Lewis notes that he is unable to determine the cause of Mr. Atkinson's neuropathy and recommends that a neurologist would be best able make that determination.

### 2. Constitutional Violation

"The Eighth Amendment, applied to the states through the Due Process Clause of the Fourteenth Amendment, prohibits infliction of cruel and unusual punishments on those convicted of crimes." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991).  A state prisoner may prevail on an Eighth Amendment claim for inadequate medical treatment if that inmate can show that the prison staff acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).  Such indifference "constitutes the

14

unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."
*Estelle*, 429 U.S. at 104 (internal quotation marks and citation omitted).  However,
"[a] negligent failure to provide adequate medical care, even one constituting medical
malpractice . . . [or] a prisoner who merely disagrees with a diagnosis or a prescribed
course of treatment does not state a constitutional violation."  *Perkins v. Kan. Dep't of
Corr.*, 165 F.3d 803, 811 (10th Cir. 1999).

     A claim for "[d]eliberate indifference has objective and subjective components."
*Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).  "The objective component
of the test is met if the harm suffered rises to a level sufficiently serious to be
cognizable under the Cruel and Unusual Punishment Clause of the Eighth
Amendment."  *Martinez*, 563 F.3d at 1088 (internal quotation marks omitted).  While
"not every twinge of pain suffered as a result of delay in medical care is actionable," a
medical need that "that has been diagnosed by a physician as mandating treatment or
one that is so obvious that even a lay person would easily recognize the necessity for a
doctor's attention" will qualify as "sufficiently serious."  *Sealock v. Colorado*, 218 F.3d
1205, 1209-10 (10th Cir. 2000).  The Tenth Circuit has clarified that this component is
truly an objective one, that is, it is adjudged on the harm as it exists or is claimed by the
prisoner, not based on the symptoms the prisoner presents to a prison employee.  *See
Martinez*, 563 F.3d at 1088; *Mata v. Saiz*, 427 F.3d 745, 751, 753 (10th Cir. 2005).

     The Court first identifies the harm Mr. Atkinson claims he suffered due to the
defendants' alleged deliberate indifference.  In connection with his first claim, Mr.
Atkinson appears to assert that the harm suffered is the pain and discomfort caused by

a delay in receiving adequate treatment for his knees and neuropathy.  *See* Compl. at

7.  The harm alleged relative to his second claim appears to be the further deterioration

of his knees and the onset of his neuropathy due to the failure to promptly refer him to a

specialist.  *See* Compl. at 8.  In making all reasonable factual inferences in plaintiff's

favor, I find that "even a lay person would easily recognize the necessity for a doctor's

attention" for these alleged harms.  *Mata*, 427 F.3d at 751.

However, "delay in medical care only constitutes an Eighth Amendment violation

where the plaintiff can show that the delay resulted in substantial harm."  *Oxendine v.*

*Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (alteration marks omitted).  In Mr.

Atkinson's case it is unclear whether the delay in getting him the type of treatment he

desired caused his alleged harms.  His own expert acknowledges that his ailment is

degenerative and that any of the potential treatments may prove ineffective in

preventing the pain or the deterioration.  Ultimately, however, the causation question

cannot be decided on summary judgment.  This does not end the analysis though, for

the causation question is not essential to proper disposition of the claim, and as such is

not material.  *See Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir.

2001).  The causation issue is not essential because Mr. Atkinson's claims turn on the

subjective component of the deliberate indifference analysis.

"To prevail on the subjective component, the prisoner must show that the

defendants knew he faced a substantial risk of harm and disregarded that risk, by

failing to take reasonable measures to abate it."  *Callahan*, 471 F.3d at 1159 (internal

quotation marks omitted).  A prisoner may establish that defendants knew of the

substantial risk of harm faced by the prisoner by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of his condition. *Mata*, 427 F.3d at 755. Furthermore, the prisoner may establish substantial harm by evidence of a "lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

In the present case, even if Mr. Atkinson could establish that a substantial risk of harm existed and that the harm was caused by defendants' inaction rather than the natural, inexorable progression of his ailment, defendants have met their burden at the summary judgment stage by showing that they took reasonable measures to abate that harm. The undisputed facts before the Court demonstrate that the defendants have examined plaintiff many times, have submitted him for various tests, and have prescribed various treatments for his knees and his neuropathy. While it is true that defendants have not pursued all possible treatments at this point and have not granted Mr. Atkinson's requests for additional medication and a referral to a specialist, the Eighth Amendment prohibition on the infliction of cruel and unusual punishment does not necessarily require them to do so. *See Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) ("Plaintiff's belief that he needed additional medication, other than that prescribed by the treating physician, as well as his contention that he was denied treatment by a specialist is . . . insufficient to establish a constitutional violation.").

The Eighth Amendment does not permit a court to act as a medical review board and question every decision regarding a prisoner's medical treatment. *See, e.g.*, *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical

17

mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Perkins*, 165 F.3d at 811.  Rather, where medical personnel undertake treatment of a condition that poses a substantial risk of harm to a prisoner, all they are required to do is to take "reasonable measures" to avert that risk.  *Callahan*, 471 F.3d at 1159.  As a result, the Eighth Amendment – as opposed to some tort duty – is violated only where the measures taken are medically indefensible.

In Mr. Atkinson's case, defendants have adopted a defensible diagnosis and outlined a course of treatment, albeit a conservative one.  Plaintiff's medical expert, Dr. Lewis, validated their approach as a preliminary treatment of osteoarthritis.  While Dr. Lewis has suggested additional prospective treatments, he did not suggest when those treatments ought to take place and did not malign defendants' current approach.  Therefore, there is no evidence before the Court that indicates that the measures defendants have taken in diagnosing or treating Mr. Atkinson's condition are pretextual or medically indefensible.  Therefore, they cannot be deemed unreasonable.

Instead, as currently presented, Mr. Atkinson disagrees with the diagnoses and the course of treatment elected by the prison medical staff.  Such a claim is more appropriately characterized as one for malpractice rather than cruel and unusual punishment.  *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) ("[A] mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment.").  Whether it be chondromalacia, osteoarthritis, or neuropathy, Mr. Atkinson suffers from a pain-inducing ailment.  The Eighth Amendment does not

18

entitle him to be completely free of pain, nor does it entitle him to the treatment or doctor of his choice.  *See Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008); *see also Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992).  Instead, the Eighth Amendment, in prohibiting the infliction of cruel and unusual punishment, ensures that prison medical staff will employ reasonable measures in treating Mr. Atkinson's serious medical conditions.  The evidence before the court demonstrates that Mr. Atkinson has received this constitutionally mandated level of treatment at AVCF.

Because the defendants do not bear the ultimate burden of persuasion at trial, the fact that they have identified a lack of evidence to support the subjective component of plaintiff's claim shifts the burden to Mr. Atkinson to show a genuine issue for trial on a material matter.  *See Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001).  Mr. Atkinson has failed to make such a showing.  Therefore, the undisputed material facts demonstrate that defendants were not deliberately indifferent to plaintiff's serious medical needs and, thus, did not violate plaintiff's Eighth Amendment right to be free of cruel and unusual punishment.

In sum, because there is no Constitutional violation, Mr. Atkinson's claims for injunctive relief against defendants Ortiz and Leyba in their official capacities fail. Furthermore, the lack of a constitutional violation ends the inquiry under the qualified immunity analysis, obviating the need to undertake the "clearly established" prong of that analysis.  Defendants Wasko, Beecroft, Singh, and Laurence are entitled to qualified immunity against Mr. Atkinson's claims for damages against them in their individual capacities.  As a consequence, all remaining defendants are entitled to summary judgment on the claims asserted against them.

## III.  CONCLUSION

For the reasons stated above, it is

**ORDERED** that defendant Beecroft's motion for summary judgment [Docket No. 122] is GRANTED.  It is further

**ORDERED** that the defendants Joe Ortiz, Ronald Leyba, Kellie Wasko, Cindra Martinez, Tejinder Singh, and Theodore Laurence's combined motion for summary judgment [Docket No. 124] is GRANTED.  It is further

**ORDERED** that the Clerk shall forthwith enter judgment in favor of defendants Patricia Beecroft, Joe Ortiz, Ronald Leyba, Kellie Wasko, Cindra Martinez, Tejinder Singh, and Theodore Laurence and against plaintiff Rodney Atkinson.

DATED September 29, 2009.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge